UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PAUL J. FARGO,

   Petitioner,

v.            Case No. 13-cv-1048-PP

TIMOTHY DOUMA, WARDEN,

   Respondent.

---

**DECISION AND ORDER DENYING PETITION FOR WRIT OF *HABEAS CORPUS* (DKT. NO. 1)**

---

  Petitioner Paul Fargo was convicted by a jury of first-degree sexual assault of a child under the age of thirteen, in violation of Wis. Stat. §948.02(1)(e). He filed a petition for a writ of *habeas corpus* under 28 U.S.C. §2254, arguing that (1) the trial court violated his constitutional right to present a defense by excluding evidence of the victim's prior sexual knowledge, and (2) the trial court violated his right to be represented by counsel at all critical stages of the proceeding by denying his motion for a mistrial based on an *ex parte* conversation between a bailiff and one of the jurors. Dkt. No. 1. The petitioner exhausted these claims in the state courts, and he was denied relief. The *habeas* case now is ripe for a decision. For the reasons explained below, the court will deny the petition, because the court concludes that the state court's decision is not contrary to, nor an unreasonable application of, clearly established federal law.

1

## I.    BACKGROUND

In the Circuit Court of Kenosha County, Wisconsin, the petitioner was convicted by a jury of first-degree sexual assault of a child under the age of thirteen, in violation of Wis. Stat. §948.02(1)(e). The charge "arose from the child's claim that Fargo inserted his finger into her vagina and repeatedly 'itched' her vagina." State v. Fargo, 809 N.W.2d 900, ¶1 (Wis. Ct. App. Jan. 18 2012). He raised multiple issues in his unsuccessful state court appeal, two of which he pursued in his *habeas* petition.

### A.    The Trial Court Excluded Evidence Relating to the Victim's Prior Sexual Knowledge

The petitioner's first claim is that the circuit court erred by excluding potentially exculpatory evidence that the victim had prior sexual knowledge. In the trial court, the petitioner moved to introduce evidence that the victim "and a four-year-old playmate were engaged in 'sex play' a few weeks before Fargo allegedly assaulted her." Id., ¶10. At a hearing on the petitioner's motion, the petitioner's trial counsel proffered that the victim and her playmate were together in an upstairs room of the victim's house, while the victim's mother and the mother of the playmate were downstairs. Dkt. No. 9-11 at 4. According to counsel, the victim's mother noticed the children became quiet and she went upstairs, where she saw the victim and the playmate "naked lying on top of each other, he on top of her, and were touching each other." Dkt. No. 9-11, at 4. The petitioner's counsel referred to the children's activity as "sex play." Id.

Wisconsin's rape shield law, Wis. Stat. §972.11(2), generally prohibits the introduction of evidence concerning the alleged victim's prior sexual conduct.

2

State v. Carter, 782 N.W.2d 695, 709-10 (Wis. 2010). In certain cases, however, a defendant can establish that the trial court should exercise its discretion to admit "otherwise excluded evidence of a child complainant's prior sexual conduct for the limited purpose of proving an alternative source for sexual knowledge." Id., ¶42. The five-prong test established by the Wisconsin Supreme Court requires a defendant to show:

> (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect.

State v. Pulizzano, 456 N.W.2d 325, 335 (Wis. 1990).

The trial court held two hearings regarding the defendant's proffered "sex play" evidence. After the first hearing, in which the trial court did not take testimony, the court stated that it was uncertain whether the prior act clearly had occurred or closely resembled the act at issue in this case. Dkt. No. 9-11 at 25. The court stated that it was "leaning towards allowing" the evidence to be admitted, but would have felt "more comfortable making a final ruling on this after an offer of proof from [the victim's mother] on the day of trial." Id. at 26.

At the second hearing, held during the trial outside the jury's presence, the victim's mother testified that, when she went upstairs to check on the children, she found the victim and her playmate "with their pants down." Dkt. No. 9-12 at 13. She testified that she "immediately closed the door, went downstairs, and asked [the playmate's] mom what to do." Id. After being recalled to testify, the victim's mother added that, when she observed the

children with their pants down, she saw the playmate "standing over [the victim]. She was laying on her back. And he was standing over her with his pants down." Id. at 16-17. She did not observe the children touching each other with their hands or fingers. Id. at 17. The petitioner then called a private investigator as an impeachment witness, who testified that the victim's mother told her that she saw both children naked, the playmate was on top of the victim, and the playmate's penis was on the child's stomach. The trial court denied the petitioner's motion to admit evidence of "sex play" because the court found no evidence of "sex play," touching, sexual intercourse, or sexual contact. Id. at 27-28. The court further found that there would be a danger of unfair prejudice if the evidence were admitted. Id. at 28.

On appeal, the Wisconsin Court of Appeals concluded that the trial court's "findings about the 'sex play' evidence are supported by the record." Fargo, 809 N.W.2d 900, ¶14. That court agreed that was "a dispute about exactly what happened between the children and whether the conduct could even be described as sexual at all." Id. The appellate court held that the trial court did not err in excluding this evidence because the petitioner's "offer of proof did not establish that the playmate's act closely resembled the allegations against him." Id. Because the court found that the petitioner did not show that the prior act clearly occurred and closely resembled the allegations against him, as required by the first two prongs of the Pulizzano test, the appellate court concluded that the trial court correctly excluded this evidence.

B.    <u>The Trial Court Denied the Petitioner's Motion for a Mistrial Based on an *Ex Parte* Discussion Between a Bailiff and a Juror.</u>

The petitioner's second claim is based on a conversation between one juror and a court bailiff, which occurred after the trial concluded and the jury retired to deliberate. When a bailiff was in the jury room cleaning up after lunch, "one of the jurors spontaneously asked [the bailiff] what do we do if we're 50/50." Dkt. No. 9-17 at 72. The bailiff told the juror that "you need to discuss it further or if you want any additional information you need to write a note to the judge asking more information." <u>Id.</u> The petitioner's counsel moved for a mistrial based upon the bailiff's interaction with the juror, arguing that the bailiff essentially gave the "dynamite instruction" to the juror, otherwise known as an <u>Allen</u> charge[1], which can be given to the jury if it reports that it is deadlocked. The trial court denied the mistrial motion because it did not "see any harm that the bailiff caused," although the court agreed with counsel that the bailiff should not have answered the question. <u>Id.</u> at 76.

The Wisconsin Court of Appeals affirmed the trial court's decision to deny the petitioner's motion for a mistrial based on the bailiff's conversation with the juror. That court held that there was "no evidence that the jury was deadlocked at the time the bailiff interacted with the juror. While the bailiff should have directed the juror's inquiry to the judge, the bailiff's remarks were nevertheless consistent with the thrust of the dynamite instruction." Further, the court rejected the petitioner's characterization of the conversation as "critical," concluding that the bailiff's remark was made to one juror and did

---

[1] <u>United States v. Fouse</u>, 578 F.3d 643, 651 (7th Cir. 2009) (citing <u>Allen v. United States</u>, 164 U.S. 492 (1896)).

not carry the weight of a remark or instruction from the judge." Id. at ¶25. The Wisconsin Supreme Court denied the petitioner's petition for review, and he timely filed his *habeas* petition in this court.

## II.    ANALYSIS

### A.    The Petitioner's Claims Are Subject to AEDPA Deference.

The parties dispute the correct standard of review under which the court must review the petitioner's claims. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a state prisoner is entitled to seek *habeas* relief on the ground that he is being held in violation of federal law or the U.S. Constitution. 28 U.S.C. §2254(a). When a state court already has adjudicated the petitioner's claim on the merits, AEDPA precludes *habeas* relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). This is known as "AEDPA deference." Berghuis v. Thompkins, 560 U.S. 370, 390 (2010). "Section 2254(d) thus demands an inquiry into whether a prisoner's 'claim' has been 'adjudicated on the merits' in state court; if it has, AEDPA's highly deferential standards kick in." Davis v. Ayala, ___ U.S. ___, 135 S. Ct. 2187, 2198 (2015) (citation omitted). If not, the court reviews the petitioner's claim *de novo*. In Ylst v. Nunnemaker, 501 U.S. 797 (1991), the Supreme Court explained that when the last state court to reject a prisoner's claim issues only an unexplained order, a federal *habeas* court should "look through" the unexplained order to the last reasoned decision to address the

6

petitioner's claims, and determine whether that decision reached the merits of claims. Id. at 804.

In the context of *habeas* jurisprudence, "the word 'merits' is defined as '[t]he intrinsic rights and wrongs of a case as determined by *matters of substance,* in distinction from matters of form.'" Johnson v. Williams, ___ U.S. ___, 133 S. Ct. 1088, 1097 (2013) (quoting Webster's New Int'l Dictionary 1540 (2d ed.1954) (emphasis in the original)). Cases decided on the basis of the "competence of the tribunal or the like," "procedural details," or "technicalities" are not decisions "on the merits." Id. In Ayala, the Supreme Court concluded that "the California Supreme Court's decision that any federal error was harmless beyond a reasonable doubt under Chapman . . . undoubtedly constitutes an adjudication of Ayala's constitutional claim 'on the merits.'" Ayala, 135 S. Ct. at 2198; see also Jensen v. Clements, 800 F.3d 892, 900 (7th Cir. 2015) ("A harmless-error determination is a substantive determination, not merely one of form.").

In this case, the parties disagree whether the Wisconsin Court of Appeals, the last state court to issue a reasoned decision on the petitioner's claims, decided the petitioner's claims on the merits for purposes of *habeas* review. The petitioner argues that he framed both of his arguments in federal constitutional terms in his appeal to the Wisconsin Court of Appeals, but that that court did not address his constitutional arguments in the course of its decision. Consequently, he argues that the Wisconsin Court of Appeals did not reach the merits of his *habeas* claims, and that this court must review them *de novo.*

Case 2:13-cv-01048-PP   Filed 09/28/16   Page 7 of 20   Document 26

The respondent counters that the Wisconsin Court of Appeals decided both of the claims on their merits, so the court must give its decision AEDPA deference. Responding to the petitioner's argument regarding the juror's communication with the bailiff, the respondent contends that the Wisconsin Court of Appeals reached the petitioner's argument that if the trial court had committed constitutional error, it was harmless, and therefore decided that issue on the merits. The respondent argues that the state court rejected the petitioner's constitutional challenge to the exclusion of the sex play evidence on the merits, because the court concluded that the petitioner did not satisfy the five-part Pulizzano test, which would have triggered the constitutional exception to Wisconsin's rape shield law and allowed that evidence to be admitted.

The petitioner is correct that the Wisconsin Court of Appeals' decision does not explicitly discuss his claims in federal constitutional terms. But §2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Johnson 133 S. Ct. at 1094 (2015) (quoting Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 784-85 (2011)). Instead, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. (quoting Richter, 131 S. Ct. at 784–785). In Johnson, the Supreme Court explained that courts will not assume than an unaddressed federal claim was not decided on the merits, because "it is not the uniform practice of busy state courts to discuss

8

separately every single claim to which a defendant makes even a passing reference." Id. One such situation is when "a line of state precedent is viewed as fully incorporating a related federal constitutional right." Id. "In this situation, a state appellate court may regard its discussion of the state precedent as sufficient to cover a claim based on the related federal right." Id. at 1095.

The state law lines of precedent upon which the Wisconsin Court of Appeals relied when affirming the petitioner's conviction incorporate the federal constitutional rights on which he bases his *habeas* claims. The Seventh Circuit has expressly held that the Pulizzano test incorporates the "right to present a defense" standards found in the Supreme Court's decisions in Chambers v. Mississippi, 410 U.S. 284 (1973) and Davis v. Alaska, 415 U.S. 308 (1974). In Dunlap v. Hepp, 436 F.3d 739 (7th Cir. 2006), the Seventh Circuit explained:

> State v. Pulizzano, 155 Wis. 2d 633, 456 N.W.2d 325 (1990), rests on Chambers and Davis and recognizes clearly that "consistent with Chambers and Davis in some cases a defendant's confrontation and compulsory process rights might require that evidence of a complainant's prior sexual conduct be admitted, notwithstanding the fact that the evidence would otherwise be excluded by the rape shield law." Pulizzano, at 331. The Wisconsin Supreme Court was looking at the right question. The issue before us is whether it was unreasonable in light of Chambers and Davis to conclude that Dunlap's rights were not violated.

Consistent with Dunlap, the court finds that the Wisconsin Court of Appeals' decided the petitioner's constitutional right-to-present-a-defense claim on the merits. Fargo, 809 N.W.2d 900, ¶¶11-14.

Likewise, the Wisconsin Court of Appeals decided the petitioner's constitutional right-to-counsel claim on the merits. The petitioner offered two arguments in support of this issue. First, he argued that the bailiff's *ex parte* conversation with the juror was "a critical communication of a constitutional dimension" that "fundamentally affected the trial." Dkt. No. 9-5 at 30-31. He presented the issue of harmless error to the appellate court in federal constitutional terms and, contending that the error was not harmless, he sought a new trial on remand. Id. at 31. Within that same section of his brief, the petitioner also argued that the trial court should have granted his motion for a mistrial because, "[a]s the jury was deadlocked 50/50, the trial court . . . had the opportunity to issue the issue the 'Dynamite Instruction' properly, but failed to do so." Id.

The Wisconsin Court of Appeals addressed both of the petitioner's arguments separately in its decision. Initially, that court discussed the petitioner's argument that the trial court should have granted his motion for a mistrial because "the bailiff essentially gave the 'dynamite instruction' to the juror." Fargo, 809 N.W.2d 900, ¶23. The court of appeals concluded that the petitioner's argument that the jury was deadlocked was "pure speculation," because there was "no evidence the jury was deadlocked at the time the bailiff interacted with the juror." Id., ¶24. Moreover, the court concluded that "the bailiff's remarks were nevertheless consistent with the thrust of the dynamite instruction." Id. The court then rejected the petitioner's contention that the bailiff's communication with the juror was "critical," reasoning that "[t]he

10

bailiff's remark was made to one juror and did not carry the weight of a remark or instruction from a judge." Id., ¶25.

The petitioner contends that the only case cited by the Wisconsin Court of Appeals in this portion of its opinion, State v. Bunch, 529 N.W.2d 923 (Wis. Ct. App. 1995), shows that the state court did not reach his constitutional argument, because Bunch does not address the constitutional issue the petitioner raised and cites only one federal case, which also does not address the issue. The court finds that this argument fails, because the Wisconsin Court of Appeals' decision reflects its agreement with the trial court's determinations that no harm arose from the bailiff's communication with the juror, the communication was not "critical," as the petitioner argued, and did not rise to the level of prejudicial constitutional error. See Fargo, 809 N.W.2d 900, ¶¶23-25.

The court will grant AEDPA deference to both of the petitioner's *habeas* claims, because the court can discern no basis to conclude that the state court did not adjudicate his claims on the merits.

> B.   The State Court's Decision Is Not Contrary to or an Unreasonable Application of Clearly Established Federal Law.

"Clearly established Federal law" refers to the holdings of the Supreme Court that existed at the time of the relevant state court adjudication on the merits. Greene v. Fisher, ___ U.S. ___, 132 S. Ct. 38, 44 (2011); Williams v. Taylor, 529 U.S. 362, 412 (2000). A decision is "contrary to" federal law if the state court applied an incorrect rule—*i.e.,* one that "contradicts the governing law" established by the Supreme Court—or reached an outcome different from

11

the Supreme Court's conclusion in a case with "materially indistinguishable" facts. <u>Williams</u>, 529 U.S. at 405–06. A state court unreasonably applies federal law when it "identifies the appropriate standard but applies it to the facts in a manner with which a reasonable court would disagree." <u>Etherly v. Davis</u>, 619 F.3d 654, 660 (7th Cir. 2010) (citing <u>Williams</u>, 529 U.S. at 413, and <u>Williams</u> v. <u>Thurmer</u>, 561 F.3d 740, 742-43 (7th Cir. 2009) (per curiam)). "Mere error" is not enough to overcome AEDPA deference; instead, the state court's decision must be objectively unreasonable, <u>Etherly</u>, 619 F.3d at 660, meaning it is "beyond any possibility for fairminded disagreement," <u>Mosley v. Atchison</u>, 689 F.3d 838, 844 (7th Cir. 2012) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)).

> 1.   *The State Courts Did Not Violate the Petitioner's Confrontation Clause Right to Present a Defense.*

In <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678 (1986), the Supreme Court stated that "[t]he Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him." The court went on to say that the "main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" (citing <u>Davis</u>, 415 U.S. 308, 315-16 (1974) (internal quotations and citations omitted) (emphasis in the original)). Nonetheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant."

Id. at 679. Thus, 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Id. (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in the original)). A Sixth Amendment violation occurs when the defendant shows that he was denied the opportunity to elicit testimony that would be "relevant and material to the defense." United States v. Vasquez, 635 F.3d 889, 895 (7th Cir. 2011) (citing United States v. Williamson, 202 F.3d 974, 979 (7th Cir. 2000)).

The petitioner asserts that the trial court violated his constitutional rights to present a defense and confront witnesses against him by excluding evidence pursuant to Wisconsin's rape-shield statute, Wis. Stat. §972.11(2). That statute protects sexual assault victims by preventing introduction of evidence of the victim's prior sexual activity. According to the petitioner, he should have been allowed to introduce evidence that the victim had been engaged in sex play in the weeks before she accused the petitioner of abusing her. The Wisconsin Court of Appeals evaluated the petitioner's right-to-present-a-defense claim under the balancing test articulated in State v. Pulizzano, 456 N.W.2d 325, 333 (1990), which requires the defendant to show that "the prior sexual activity occurred, the conduct closely resembled the present case, the conduct is relevant to a material issue, the evidence is necessary to the defendant's theory of defense, and the probative value outweighs any prejudicial effect." Acosta v. Thurmur, 401 F. App'x 124, 126-27 (2010). If the defendant establishes those elements, the trial court then evaluates whether a compelling state interest underlying the rape-shield law overrides the

defendant's Confrontation Clause rights to present the evidence. Id. (citing Pulizzano, 456 N.W.2d at 335).

The Supreme Court has not directly addressed whether Wisconsin's rape-shield statute (or any similar rape-shield statute) violates a defendant's right to present a defense. See Hanson v. Beth, 738 F.3d 158, 163-64 (7th Cir. 2013) (quoting Pack v. Page, 147 F.3d 586, 598 (7th Cir. 1998) ("[T]he Supreme Court has yet to hold that any application of a rape-shield statute is inconsistent with the Constitution, making it particularly hard to say that failure to make a constitutional exception is 'contrary to clearly established Federal law.'")); see also Jardine v. Dittmann, 658 F.3d 772, 778 (7th Cir. 2011) ("the Supreme Court has never deemed a rape-shield statute unconstitutional"). The Seventh Circuit has "nonetheless noted before that the Pulizzano balancing test is consistent with governing federal law . . . ." Acosta, 401 F. App'x at 127 (citing Dunlap, 436 F.3d at 742).

Applying the Pulizzano test, the Wisconsin Court of Appeals upheld the trial court's decision to exclude the evidence of the victim's prior sex play, because the petitioner did not establish the first two prongs of the Pulizzano test—"that the prior act clearly occurred and closely resembled the allegations against him . . . ." Fargo, 809 N.W. 900, ¶14. Consequently, the court did not go on to evaluate the next three prongs—whether the evidence of the victim's alleged prior "sex play" was relevant to a material issue, necessary to the defendant's theory of defense, and offered probative value that outweighed any prejudicial effect. If the petitioner had established all of the five Pulizzano factors, the trial court would have been required to determine whether any

14

compelling state interest overrode the petitioner's Confrontation Clause rights to present the evidence. But, the state appellate court agreed with the trial court that there was insufficient evidence that the victim had engaged in "sex play" in the first place.

The court concludes that the Wisconsin Court of Appeals decision was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the court will deny *habeas* relief to the petitioner on this claim.

> *2.      The Bailiff's Conversation with the Juror Did Not Violate the Petitioner's Right to Counsel.*

In <u>Remmer v. United States</u>, 347 U.S. 227, 229 (1956), the Supreme Court held that:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.

The Supreme Court further stated that the presumption of prejudice is not conclusive, "but that the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." <u>Id.</u>, 347 U.S. at 229.

In a later case, <u>United States v. Olano</u>, 507 U.S. 725 (1993), the Supreme Court clarified that the <u>Remmer</u> presumption may not be applicable in all cases, given the particular facts of a case. In <u>Olano</u>, the trial court allowed alternate jurors to observe the jury's deliberations, in violation of the Rules of

15

Criminal Procedure. Id. at 728-29. The Supreme Court concluded that a presumption of prejudice was not appropriate in that case, and instead engaged in a factual analysis of whether the trial court's error was "inherently prejudicial." Id. at 740-41. The Supreme Court explained, "[t]here may be cases where an intrusion should be presumed prejudicial, but a presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?" Id. at 739.

Reading Remmer together with Olano, the Seventh Circuit held in Hall v. Zenk that "[t]here is no doubt that Remmer itself established a presumption of prejudice applicable when third-party communications concerning a matter at issue in a trial intrude upon a jury." Hall v. Zenk, 692 F.3d 793, 799 (7th Cir. 2012) (citing Remmer, 347 U.S. at 229). The court found that "what seems to be 'clearly established' is that federal constitutional law maintains a presumption of prejudice in at least some intrusion cases." Id. at 803. It concluded that Remmer applied to the state courts, and also that: "(1) not all suggestions of potential intrusion upon a jury deserve a presumption of prejudice, and thus the government does not always carry the burden of proving prejudice"; and "(2) there are at least some instances of intrusion upon a jury which call for a presumption of prejudice." Hall, 692 F.3d at 801 (citing Olano, 507 U.S. at 739). "The *Remmer* presumption is meant to protect against the potential Sixth Amendment harms of extraneous information reaching the jury, but a state court's failure to apply the presumption only results in actual prejudice if the jury's verdict was tainted by such information." Hall, 692 F.3d

16

at 805. Like the instant case, the <u>Hall</u> case involved an appeal of a district court's grant of a §2254 petition; in that context, the court held that even after applying the <u>Remmer</u> presumption, the petitioner was required to establish that "he was prejudiced by the state courts' constitutional error." <u>Id.</u>

Under §2254, showing error is not enough to establish entitlement to *habeas* relief because "a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in <u>Brecht</u> . . . whether or not the state appellate court recognized the error and reviewed it for harmlessness." <u>Fry v. Pliler</u>, 551 U.S. 112, 121-22 (2007). The "actual prejudice" standard articulated by the Supreme Court in <u>Brecht</u> applies "regardless of whether the state appellate court determined that the error was harmless beyond a reasonable doubt under <u>Chapman v. California</u>, 386 U.S. 18, 87 S. Ct. 824 (1967)." <u>Jones</u>, 635 F.3d at 1030 (quoting <u>Fry</u>, 551 U.S. 112, 121–22.

"The <u>Brecht</u> standard reflects the view that a 'State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." <u>Ayala</u>, 135 S. Ct. at 2198 (quoting <u>Calderon v. Coleman,</u> 525 U.S. 141, 146 (1998)). But, "if a habeas court has so much as a 'grave doubt as to the harmlessness of [a constitutional error], it should grant relief." <u>Jones</u>, 635 F.3d at 1030 (quoting <u>O'Neal v. McAninch</u>, 513 U.S. 432, 445 (1995). "<u>Ayala </u>also makes clear that this requirement does not mean that the Wisconsin appellate court's harmless error determination lacks significance." <u>Jensen v. Clements</u>, 800 F.3d 892, 902 (7th Cir. 2015) (citing

17

Case 2:13-cv-01048-PP   Filed 09/28/16   Page 17 of 20   Document 26

Ayala, 135 S. Ct. at 2198). Rather, the "Brecht standard 'subsumes' the requirements that §2254(d) imposes when a federal habeas petitioner contests a state court's determination that a constitutional error was harmless under Chapman." Id. (citing Fry, 551 U.S. at 120 (2007)).

Regardless of the fact that the state court may have erred by failing to analyze whether Remmer's presumption of prejudice applied, the petitioner still must show that he suffered prejudice—that he was actually prejudiced by the bailiff's statement to the juror. The petitioner has not done so.

As the state appellate court found, and the respondent notes, the bailiff had contact with only one juror, who did not state that the jury was deadlocked. Instead, the juror asked the bailiff one question—what the jury should do "if we're 50/50." Dkt. No. 9-17 at 72. The court agrees with the state court's conclusion that the bailiff should have directed the juror's question to the judge instead of answering it. But there is no evidence that the jury ever was deadlocked (the only circumstance that would have required the trial court may have given the dynamite instruction). The state court found that the petitioner's contention that the jury was deadlocked at the time of the conversation between the bailiff and the jury was "pure speculation." Further, the communication did not address the factual and legal issues in the case, or the ultimate issue of whether the petitioner was guilty or innocent. The petitioner has, at most, demonstrated that one juror asked the bailiff a hypothetical question about procedure, which the bailiff answered in pretty much the same way the court would have done had the whole jury asked the question of the judge. He has not demonstrated that that this made the jury

18

more like to return a verdict against him, or prejudiced the jury against him in any way.

The petitioner has failed to demonstrate that the Wisconsin Court of Appeals' decision affirming the trial court's finding that the bailiff's contact with the juror resulted in actual prejudice, *i.e.*, that the jury actually was deadlocked and its verdict was affected by the bailiff's contact with the juror. The court concludes that the Wisconsin Court of Appeals decision was neither contrary to nor an unreasonable application of clearly established federal law and the court will deny *habeas* relief to the petitioner on this claim.

## III.  THE COURT WILL NOT ISSUE A CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

Where, as here, a district court has rejected a petitioner's constitutional claims on the merits, "the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

19

wrong." Id., 529 U.S. at 484. In this case, the court concludes that its decision that the petitioner is not entitled to *habeas* relief is neither incorrect nor debatable among jurists of reason. Therefore, the court will not issue a certificate of appealability.

## IV.    CONCLUSION

For the reasons explained above, the court **DENIES** the petition, **DECLINES** to issue the petitioner a certificate of appealability, and requests the clerk to enter judgment dismissing this case.

Dated in Milwaukee, Wisconsin this 28th day of September, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge